```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
             Civil No. 06-1517(DSD/SRN)
```

John Tinucci and
Karen Tinucci,

       Plaintiffs,

v.                                                                  **ORDER**

Allstate Insurance Company,

       Defendant.

> Erik F. Hansen, Esq., Elizabeth E. Caturia, Esq., J. Robert Keena, Esq. and Hellmuth & Johnson, 10400 Viking Drive, Suite 500, Eden Prairie, MN 55344, counsel for plaintiffs.
>
> Brian A. Wood, Esq., Benjamin P. Hayek, Esq. and Lind, Jensen, Sullivan & Peterson, 150 South Fifth Street, Suite 1700, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This is an insurance coverage dispute between plaintiffs John Tinucci and Karen Tinucci (the "Tinuccis") and defendant Allstate Insurance ("Allstate"). In September 1989, the Tinuccis entered into an agreement for the construction and purchase of a new home (the "Tinucci residence"). The Tinucci residence has a brick front

exterior, and all remaining exterior walls are finished with stucco. The Tinuccis purchased a homeowners insurance policy for the Tinucci residence from Allstate (the "Policy"). (See Hayek Aff. Ex. 1.) In 2005, the Tinuccis discovered water damage while preparing to sell their home and submitted a claim under the Policy to Allstate. Allstate denied coverage, and this declaratory judgment action ensued.

The Policy Allstate issued to the Tinuccis provides coverage for "sudden and accidental direct physical loss" to property described in the Policy "except as limited or excluded" in the Policy. (Id. at 7.) As relevant to this litigation, the Policy excludes coverage in paragraph 15 for "wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;" "mechanical breakdown;" and "rust or other corrosion, mold, wet or dry rot." (Id. at 9.) Pursuant to paragraph 22, the Policy excludes coverage for loss "consisting of or caused by" "faulty, inadequate or defective ... design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation or remodeling; or maintenance" of property. (Id. at 10.) Under paragraph 24, which is located in an endorsement, the Policy excludes from coverage any loss that arises out of mold, fungus, wet rot, dry rot or bacteria.

On May 12, 2005, in preparation for the sale of their home, the Tinuccis hired an inspector from Hankey & Brown Inspection Services, Inc., to conduct moisture testing. The inspector observed, among other things, standing water at the rear of the Tinucci residence, water damage and decay around the outer panel of the basement patio door, complex roof lines creating a risk of ice dams and flash leaks in cold weather, a clogged and incomplete gutter system, indications of stucco repairs, water-intrusion stains below several windows and below-grade stucco termination on all sides. (See id. Ex. 2.) Additional moisture testing was conducted in June and October 2005 by Private Eye, Inc., which also revealed moisture behind the residence's stucco exterior attributable to numerous construction defects. (Id. Ex. 3.)

In November 2005, the Tinuccis notified Allstate of the water damage and their intent to file a claim for coverage under the Policy. On December 7, 2005, following an investigation and a meeting between the Tinuccis and an Allstate representative, Allstate informed the Tinuccis that the Policy did not cover the water damage. In a letter confirming their discussion, Allstate referred the Tinuccis to the exclusions located in paragraphs 15(a), 15(d) and 22. (Id. Ex. 4.) The parties dispute whether Allstate's agent also informed the Tinuccis during the meeting that the Policy only covered "sudden and accidental" loss.

The Tinuccis hired Donnelly Stucco to remediate their home and repair the construction defects. In December 2005 the Tinuccis informed Allstate that they intended to commence legal action for the denial of their claim. The Tinuccis further informed Allstate they would begin repairs within ten days and Allstate was free to inspect the residence at any point during the repair process. Allstate adjusters revisited the Tinucci residence once the stucco was removed to further inspect the nature and extent of the water damage. Allstate confirmed its prior denial of coverage.

In January 2006, the Tinuccis hired Advanced Consulting & Inspection ("Advanced Consulting") to inspect the home and assess their damages after the stucco was removed. In assessing the damages, an Advanced Consulting inspector attributed the damage to "a combination of construction deficiencies, inadequate maintenance and window defects." (Hansen Aff. Ex. C.) Following a review of Advanced Consulting's assessment and an inspection of the Tinucci home, Allstate's architectural expert, Stefan D. Helgeson of Crane Engineering, opined that the water damages were most likely due to original construction defects and the damages have occurred since the home was constructed in 1989. (See id. Ex. E.) According to Helgeson, there "is no evidence of any one time event that could have caused the construction damages" and the types of original construction defects in the Tinucci residence are common for that type of stucco home. (Id.) Advanced Consulting does not disagree

4

with Helgeson's opinion on causation. Advanced Consulting emphasizes that the defects in the Tinucci residence demonstrated substandard workmanship and disregard of the applicable building codes and city ordinances, but acknowledges that the defects are representative of industry practice during the time period the Tinucci residence was constructed. (Id. Ex. D.)

The construction defects in the Tinucci residence were completely repaired by July 17, 2006. The Tinuccis commenced this litigation against Allstate in Minnesota state court alleging that by denying coverage Allstate breached the terms of the Policy and the implied covenant of good faith and fair dealing. On April 21, 2006, Allstate removed the action to this court pursuant to 28 U.S.C. §§ 1332 and 1441. Allstate now moves for summary judgment, arguing the Tinuccis are not able to establish a prima facie case of insurance coverage because the Policy covers only sudden and accidental loss. Alternatively, Allstate argues coverage for the water damage under the exclusions set forth in paragraphs 15, 22 and 24 of the Policy. Allstate further contends that it adjusted and denied the Tinuccis' claim for water damage in good faith and in a timely manner.

**DISCUSSION**

**I.   Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in the light most favorable to the non-moving party. Id. at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  The interpretation of an insurance policy and the determination of whether policy language is ambiguous present questions of law that the court may properly decide on summary judgment.  Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001); Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 307 (Minn. Ct. App. 2002).

**II. Insurance Coverage**

Under Minnesota law, the court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 880 (Minn. 2002). Unambiguous language is given its plain and ordinary meaning. Id. Ambiguous language is construed against the drafter and in favor of the insured. Nathe Bros. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court is to "guard against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006).

The insured has the burden to establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 313 (Minn. 1995). If coverage is established, the burden shifts to the insurer to prove the applicability of a policy exclusion. Id. Exclusions in an insurance policy are construed strictly against the insurer, in light of the insured's expectations. Thommes, 641 N.W.2d at 880.

**A. Plaintiffs' Prima Facie Case**

The Tinuccis argue that the Policy is ambiguous as to whether "sudden and accidental" modifies the occurrence of a loss or the

discovery of a loss, reasoning that a gradual loss occurring over an extended period of time can be discovered suddenly. Because the Tinuccis claim they were unaware of any water intrusion issues prior to the May 12, 2005, moisture testing,[1] they argue their discovery of water infiltration within the interior walls of the Tinucci residence was sudden.

The court rejects the Tinuccis' argument that the Policy language "sudden and accidental direct physical loss" can reasonably be interpreted to mean "sudden discovery of accidental direct physical loss" or "sudden and accidental discovery of direct physical loss." Just as the court will not read into the Policy an ambiguity where none exists, the court will not interpret the Policy to include a word or concept not included. As written, the Policy unambiguously provides coverage for a direct physical loss that is "sudden and accidental." The Policy is not reasonably susceptible to an interpretation that "sudden and accidental" refers to the discovery of a loss. Therefore, the Policy is not ambiguous in that regard.

Neither is the meaning of "sudden" as used in the phrase "sudden and accidental" ambiguous. Cf. Bd. of Regents v. Royal

---

[1] In their responsive memorandum, the Tinuccis argue that it is "undisputed" that they had no warning or knowledge of any water intrusion issues in the Tinucci residence prior to May 2005 and had "no prior knowledge of any damage or leaks that would arouse their suspicions that damage was occurring." (Mem. Law Opp'n Summ. J. at 5-6.) However, the Tinuccis have provided the court no affidavit or deposition testimony to support this argument.

Ins. Co. of Am., 517 N.W.2d 888, 891-92 (Minn. 1994) ("sudden and accidental" not ambiguous as used in exception to pollution exclusion); Modern Constructors, Inc. v. Cont'l Cas. Co., 38 F.3d 377, 378 (8th Cir. 1994)(same); Bureau of Engraving v. Fed. Ins. Co., 793 F. Supp. 209, 212-13 (D. Minn. 1992) (same). When used with the conjunction "and" and the word "accidental," Minnesota courts have rejected the argument that "sudden" means "unexpected" because "accidental" in "liability insurance parlance means unexpected or unintended." Bd. of Regents, 517 N.W.2d at 891-92; see also Sylvester Bros. Dev. v. Great Cent. Ins., 480 N.W.2d 368, 373 (Minn. Ct. App. 1992). Accordingly, construing "sudden" to mean "unexpected" creates a redundancy. See Bd. of Regents, 517 N.W.2d at 891-92 ("sudden" as used in "sudden and accidental" exclusion means the opposite of gradual). "Sudden," when used in the phrase "sudden and accidental," cannot reasonably be separated from its temporal connotation and means "abruptly." Id.

Affording the unambiguous phrase "sudden and accidental" its plain and ordinary meaning, to be covered under the Policy a "direct physical loss" must be abrupt and unexpected. Although the Tinuccis considered their discovery of the water damage to be abrupt and unexpected, they have presented no evidence that the loss was sudden. Rather, all the evidence of record indicates that the water damage was caused by a variety of original construction defects present in the home since 1989. The Tinuccis equivocate

about the period of time a "sudden" loss might encompass. However, a fifteen-year development of water-intrusion damage as a result of construction defects is beyond the reasonable scope of any such period. Although unexpected, the water damage in the Tinucci residence was not a sudden loss. Therefore, the Tinuccis have not established a prima facie case of coverage under the Policy, and summary judgment in favor of Allstate is warranted.

**B.   Policy Exclusions**

Further, Allstate has met its burden to demonstrate that coverage would be excluded if the Tinuccis were able to establish a prima facie case of coverage. The construction defect exclusion located in paragraph 22 of the Policy excludes from coverage any "loss consisting of or caused by" "faulty, inadequate or defective ... design, workmanship or construction."[2] The expert reports submitted to the court by the Tinuccis and Allstate are consistent in their conclusions that the water damage in the Tinucci residence was caused by numerous construction defects and occurred gradually since 1989. No other potential cause of the water damage has been identified by either party. Therefore, even if the Tinuccis could

---

[2] Because the court holds that coverage is excluded under the construction defect exclusion, the court declines to address the parties' alternative arguments regarding the exclusions located in paragraphs 15 and 24 of the Policy.

establish a prima facie case of coverage, Allstate would be entitled to summary judgment based on the application of the construction defect exclusion.

**III.  Covenant of Good Faith and Fair Dealing**

Because the Policy does not provide coverage for the Tinuccis' claim for water damages, Allstate did not breach any implied covenant of good faith and fair dealing in denying coverage.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 26] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 11, 2007

                                            s/David S. Doty            
                                            David S. Doty, Judge
                                            United States District Court